CHICAGO—FIRST DISTRICT—OCTOBER, 1917.    483

Chicago & W. I. R. Co. v. Guaranty Co. of N. A., 207 Ill. App. 483.

## Chicago & Western Indiana Railroad Company, Appellant, v. Guaranty Company of North America, Appellee.

### Gen. No. 22,261.

1. INDEMNITY, § 28*—*when question for jury whether insurer waived limitation clause for commencement of action on bond.* Where an employer's indemnity bond required that an action thereon should be brought within one year after discovery by the assured of a default thereunder, *held*, in an action brought on the bond more than one year after such discovery, that the assured was en titled to have the jury pass upon the evidence, if there was sufficient evidence beyond a scintilla, which tended to prove that the insurer had waived the limitation clause.

2. TRIAL, § 195*—*when verdict for defendant should not be directed.* A verdict for the defendant should not be directed where there is in the record, evidence. which fairly tends to prove all the material averments of the declaration.

3. INDEMNITY, § 28*—*when verdict for defendant should not be directed.* Evidence *held* to tend to show that plaintiff may have deterred from instituting legal proceedings on an employer's indemnity bond, issued by defendant, within one year after plaintiff's discovery of a default thereunder, as required by the bond, by negotiations, conversations and letters with defendant, so that defendant's motion for a directed verdict should have been overruled, in an action brought on the bond more than one year after such discovery.

Appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1916. Reversed and remanded. Opinion filed October 10, 1917.

C. G. AUSTIN, JR., and BEVERLY W. HOWE, for appellant.

L. C. COOPER and C. W. GREENFIELD, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

This is an appeal from a judgment upon a directed verdict in favor of appellee in a suit in assumpsit brought by appellant, the Chicago & Western Indiana Railroad Company, against The Guaranty Company of North America (in the Municipal Court of Chicago), upon an indemnifying bond.

One Coyer, a clerk employed by the Chicago & Western Indiana Railroad Company (hereinafter called appellant), had charge of certain railroad tickets and parcel-room checks. In a schedule attached to an indemnifying bond dated April 1, 1905, between The Guaranty Company of North America (hereinafter called appellee) and the appellant, the name of Coyer appeared as ticket clerk, bonded in the sum of $2,000. About July 1, 1912, while the indemnifying bond was in force, it was discovered that Coyer had misappropriated, between March, 1910, and July 4, 1912, funds of the appellant, to the extent of $2,592.20. It is not disputed that the default occurred, or that it was covered at the time by the indemnifying bond. The bond provided that appellant must begin suit within one year of the discovery of the clerk's default; also, that an audit of accounts should be made once a year.

On July 23, 1913, twenty-two days more than a year after July 1, 1912, appellant brought suit in the Municipal Court against the appellee for the sum of $2,000, alleged to be due on the bond. Upon the trial, and at the conclusion of the appellant's case, the trial judge, on the ground that the suit was not brought within a year, and because the evidence did not show, in his opinion, a sufficient audit to comply with the requirements of the bond, sustained a motion of the appellee to instruct the jury to find the issues for the appellee; and upon the jury returning a directed verdict, judgment was entered accordingly in favor of the appellee.

It is claimed by the appellant, first, that inasmuch as there was evidence tending to show that the ap-

pellee took part in certain negotiations with appellant looking towards a settlement, which negotiations deterred appellant from beginning suit within the year, the trial judge erred in refusing to submit that evidence to the jury; second, that a sufficient audit, according to section 4 of the bond, was made.

It is contended by the appellee, first, that inasmuch as section 13 of the bond provided "that no suit or proceeding at law or in equity shall be brought, or arbitration required, to recover any sum hereby insured, unless the same is commenced within one year (365 days) from the date of the first discovery by or on behalf of the employer, of any default of the employee in respect of whom claim shall have been made," and the suit was not brought until after the expiration of the full year, that it is not liable; second, that no sufficient annual audit was made, as was required by section 4 of the bond.

As to the evidence of negotiations with appellant looking towards a settlement, which may have deterred appellant from beginning suit within a year, and whether it was sufficient to justify its submission to the judgment of the jury:

Practically all the negotiations and letters written were between Cooper, representing the appellee, and Austin, representing the appellant, each as counsel. In the course of the year, July 1, 1912 to July 1, 1913. the limitation fixed by the bond, within which time it was provided suit should be brought, the counsel for appellant and appellee had a number of conferences looking towards an amicable adjustment of the matter without suit; and between them a number of letters, all pertaining to a prospective settlement, and containing counter propositions, were written. The evidence is too voluminous to set forth very fully here, so we shall merely give a succinct analysis and resumé.

The letter of October 14, 1912, from appellee to ap-

pellant, made an offer of (1) payment of $1,500, that is, seventy-five per cent. of the total claim, or (2) $1,000 and an equal division between appellant and appellee of what might be recovered from the defaulter. It also, further, expressed as a reason for the offer of compromise, a desire to end the "matter in an amicable way and to dispose of it" and referred to the pleasant relations which had existed between appellant and appellee and a desire to save appellee from any "possible legal controversies." That letter certainly constituted some evidence tending to prove that appellant may, by reason of it, have been deterred from beginning suit as soon as it would have done otherwise. That it may have had some such effect is evidenced, also, by the letter of October 31, 1912, from appellant, in reply, which contains the following language: "I have not replied to your letter of October 14th heretofore, because I have been waiting to hear from the President and General Manager in reference to the proposition of compromise submitted by you." Appellee's proposition of settlement of October 14th (*supra*) was answered on October 31st, that is, seventeen days afterwards, and that lapse of time was caused, in all probability, by appellee's letter of October 14, 1912. Also, the letter of appellant, February 1, 1913, states that appellee "is waiting patiently for your solicitor * * * to call at this office as agreed, that we may take up this matter with a view to arriving at an amicable adjustment." Obviously the time was passing by reason of the mutual negotiations and so much so that even the appellee was complaining.

Later on, February 20, 1913, after a personal conference on the matter, counsel for appellee wrote making an offer of $1,500 and a division of what might be received from Coyer after appellant had received $1,500; and that letter contained the expressions "an amicable adjustment of the matter," "for the purpose

of bringing about an amicable settlement of this matter, and to save any possible necessity of resorting to the courts," "and this, we sincerely hope, we may be able to do in this case, hence the above offer, which I certainly hope will prove satisfactory and acceptable to your Company." At that time almost eight months of the limitation of twelve months had elapsed and still counsel for the appellant and appellee, apparently, were still at work endeavoring to make a settlement. Of course, the *bona fides* of the counsel we take for granted. A serious effort was being made to settle the matter out of court.

On February 26, 1913, counsel for appellant replied to appellee that he had taken the matter up with appellant and that it declined the offer of settlement. Taking the matter up, of course, consumed time and that was the normal result of appellee's conduct in making its proposition and having it entertained by appellant. Another offer of settlement was made by appellee on April 14, 1913. That was an offer of $1,000 and an equal division of what might be recovered from Coyer (and Carus, another alleged defaulter). That letter contained the phrase "and are satisfied that this Company has dealt with them fairly, then settle on that basis." As late as June 13, 1913, appellee wrote to the auditor of appellant referring him to the letter of April 14, 1913.

The letters of October 14, 1912, October 31, 1912, February 1, 1913, February 20, 1913, February 25, 1913 and June 13, 1913, together with the personal conferences, all taken together, certainly constitute considerable evidence tending to show that counsel (acting for appellant) may have been dissuaded, from time to time, within the year, from beginning suit.

The subject of waiver or estoppel as to provisions, in similar contracts, has been considered by the courts of this and other States, and in some instances it has

been held that the insurer by his conduct had waived
the condition, or estopped himself from taking ad-
vantage of it.

In *North American Acc. Ins. Co. v. Williamson,* 118
Ill. App. 670, the court used the following language:
"Stipulations to sue, if at all within the time limited
by the policy and less than statutory limitation, may
be waived by the parties. Slight evidence of waiver
will be sufficient." In *Allemania Fire Ins. Co. v. Peck,*
133 Ill. 220, which was an action on an insurance
policy where the defendant pleaded in bar the failure
of the plaintiff to sue within the six months' time
limited in the policy and the plaintiff replied that the
defendant held out reasonable hopes for an adjustment
and thereby deterred the plaintiff from commencing
suit, the court held that where the conduct of a party
induces another to delay the bringing of a suit within
the time limited, by holding out reasonable hopes of
an adjustment or settlement of the claim, the limita-
tion is waived. In *Illinois Live Stock Ins. Co. v. Baker,*
153 Ill. 240, the court used the following language:
"The vital issue on the trial was, had the company
waived the time within which, by the terms of the pol-
icy, the suit should have been begun. That the evi-
dence tended to prove such waiver, under the rule
announced in the cases cited by Judge Wall, and again
laid down in *Allemania Fire Ins. Co. v. Peck,* 133 Ill.
220, is beyond controversy." That case quotes and
sanctions the following language of Mr. Justice Wall:
"If there was once a waiver it could not be recalled or
revoked. If any substantial part of the time provided
by the limitation is lost by reason of the waiver, the
limitation is wholly gone. It cannot be revived, nor
can the plaintiff be required to sue within any time
short of the statutory limitations." In *Williams v.
Bankers' Union of Chicago,* 166 Ill. 495, the court used
the following language: "It is urged by the appellant
that the suit not being brought within one year from

the death of the insured, there was no right of recovery. The jury found especially that the appellant held out to the appellee reasonable hopes of a settlement of the claim. We think the evidence sufficient to sustain the finding and also that the same tended to show that the appellee was thereby induced to delay bringing suit. Under the circumstances the appellant is held to have waived the said limitation clause.''

In the instant case appellant was entitled to have the jury pass upon the evidence if there was sufficient evidence beyond a scintilla, which tended to prove that appellee had waived the limitation clause. Appellant may have believed, and justifiably, that the negotiations with appellee would probably result in a settlement of the case and, as a result of that belief, induced by appellee's conduct, postponed beginning suit; and it follows, therefore, that the evidence should have been submitted to the jury. We are not able to say that the jury would not be justified in concluding, from the evidence, that appellant was deterred from bringing suit within the year. If the conduct of appellee actually did induce appellant to think or believe that a settlement might be consummated, and to act accordingly, then there was evidence of a waiver, or pertaining to a waiver, that should have been submitted to the jury. It is not a question of meeting of minds, as in the case of a contract, but rather, what effect, reasonably considered, did the overt acts of appellee have on the conduct of appellant. What effect, if any, appellee's conduct, in the course of the negotiations through its letters and conferences, had upon the conduct of appellant, was a subject to be considered by the jury. Whether or not the negotiations, conferences and letters did deter the appellant from instituting legal proceedings, where there was, as here, evidence tending reasonably to show that the appellant may have been deterred from beginning suit, was a question for the jury to answer.

As to the quantity and quality of the evidence, applying the rule laid down in *Libby, McNeill & Libby v. Cook,* 222 Ill. 206, that "a verdict for the defendant should not be directed when there is in the record evidence which fairly tends to prove all the material averments of the declaration," we are of the opinion that the motion of the appellee at the close of appellant's evidence for a directed verdict should have been overruled.

As to whether appellant complied with clause 4 of the bond, which is a provision "that the employer shall observe due diligence and exercise reasonable skill, care and precaution in the examination and supervision of the books and accounts of said employees for the prevention or detection of default, and shall also cause a competent inspection, audit and verification of their books and accounts, and for all cash, securities and property in their custody    *    *    *    to be made at least once within every twelve months."

Coyer's duty as ticket clerk was to keep an accurate record of the stock of suburban tickets and to dispense those tickets to the agents along the line as they were in need; also to keep a correct record of the amounts of money turned in by the different agents along the line. He also had charge of the parcel-room tickets and checks in the Dearborn and Englewood stations and gave them out to the parcel-room clerks. Also, he kept a record of the amounts of money transmitted to the company by the ticket agents along the line. Apparently his default consisted in a failure to turn over all the receipts from the parcel room, the amount of his defalcation being approximately the difference between the face value of the tickets sold and the amount turned in. The amounts unaccounted for were taken between March, 1910 and July 4, 1912, and amounted approximately to $2,500.

The evidence shows, through the testimony of the assistant auditor for the appellant, that there was an

annual audit of the parcel room made by chartered accountants and that there were other audits made "at least twice a year" and that "There was an audit made of his (Coyer's) accounts." The bond itself does not specifically provide for an audit of the accounts of each employee. What it does provide for is that, in the matter of supervision of the accounts, "due diligence" and "reasonable skill, care and precaution" shall be shown. The testimony of the assistant auditor is not only evidence tending to show, but strong evidence, that the requirements of the bond were complied with. The fact that the assistant auditor testified, on the cross-examination, that if an audit had been made "of the accounts involving the parcel room and the moneys received there and the parcel room checks as returned to the custody * * * of Coyer" that the shortage would have been discovered, may be some evidence, but certainly it is not sufficient evidence that the provision in the bond was not complied with.

Inasmuch as we are of the opinion that the trial court erred in directing a verdict for the defendant, the judgment is reversed and the cause remanded.

*Reversed and remanded.*