### Chicago & Western Indiana Railroad Company, Appellee, v. The Guarantee Company of North America, Appellant.

### Gen. No. 24,145.

1. INDEMNITY, § 24*—*when provisions of bond as to audit complied with.* In an action upon a bond for the indemnification of plaintiff against defalcation by its employees, evidence *held* to show a compliance by plaintiff with provisions of the bond for audits and verification of accounts of such employees.

2. INDEMNITY, § 24*—*when misrepresentations on renewal not shown.* In an action upon a bond for the indemnification of plaintiff against defalcation by certain of its employees, evidence for defendant *held* not to show anything in the nature of misrepresentation by plaintiff in certificates given at the times of renewal of the bond.

3. INDEMNITY, § 22*—*when instruction on waiver of provision limiting time for suit properly refused.* In a suit upon an indemnity bond in which it was contended that negotiations for settlement of plaintiff's claim amounted to a waiver by defendant of the expiration

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of the period limited in the bond within which suit could be brought, *held* that the question of waiver was for the jury, and an instruction requested by defendant that "the mere pendency of negotiations * * * conducted in good faith with a view to a compromise of the plaintiff's claim * * * was not of itself a waiver," was properly refused.

4. INDEMNITY, § 24*—*when offer of compromise admissible though made after expiration of period for suit fixed by bond.* In an action upon a bond indemnifying plaintiff against defalcation of its employees, *held* that a letter of defendant concerning a compromise of the claim offered for the purpose of showing a waiver of the period of limitations fixed in the bond was properly admitted though written after expiration of the time provided by the bond for suit after dis- covery of a defalcation.

Appeal from the Municipal Court of Chicago; the Hon. FRANK H. GRAHAM, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1918. Affirmed. Opinion filed April 30, 1919. *Cer- tiorari* denied by Supreme Court (making opinion final).

L. C. COOPER and C. W. GREENFIELD, for appellant.

C. G. AUSTIN, JR., and BEVERLY W. HOWE, for appel- lee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a judgment for $2,500, upon a verdict in favor of the plaintiff in a suit in assump- sit against the defendant upon an indemnifying bond.

There have been two trials. Our review upon the appeal from the former judgment—which was upon a directed verdict in favor of the defendant—is in the printed reports 207 Ill. App. 483. Inasmuch as that opinion sets forth fully the nature of the cause of ac- tion and the general contentions of the parties, we shall refrain here from reciting, at large, the history of the case.

The defendant contends (1) that whatever audits and verifications the evidence shows were made, they

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

did not satisfy the requirements of the terms of the indemnifying bond; (2) that the suit is barred by the limitation clause contained in the bond.

The original bond was dated April 1, 1905, and by its terms expired April 1, 1906. It was, however, extended, by annual renewals, to and including the period of the alleged defaults which are set forth in the plaintiff's statement of claim. Among the names of employees recited in the schedule attached to the bond was the name of one A. U. Coyer. He was scheduled as a ticket clerk in the auditor's office at the Dearborn Station, and the amount of indemnity as to him was fixed at $2,000. In the schedule covering the period from April 1, 1912, to April 1, 1913, the reference to Coyer is slightly changed. It is as follows: "Coyer A. U. Ticket Clerk Dearborn Station— $2,000." Coyer, whose defalcation was indemnified against, was employed in the auditor's office; had a "cage" therein and dispensed and had charge of suburban tickets and tickets or checks used in the parcel rooms at the Dearborn and Englewood Stations. He also kept account of the tickets and checks used and returned, and the amounts received therefor.

The amount of Coyer's defalcation as set forth in a letter of July 19, 1912, and as sent by the plaintiff to the defendant, was $2,561.60, which amount was in excess of the amount for which Coyer was bonded. Paragraph 4 of the bond provides:

"That the Employer shall observe due diligence, and exercise reasonable skill, care and precaution in the examination and supervision of the books and accounts of the said employees for the prevention or detention of default, and shall also cause a competent inspection, audit and verification of their books and accounts, and for all cash, securities and property in their custody, * * * to be made at least once within every twelve months during the continuance of this bond, and as much oftener as may be required either by the by-laws, rules or regulations of the Em-

ployer, or by any written statement in that behalf made by the Employer to the Company."

Paragraph 6 of the bond provides as follows:

"That any written answers, statements or certificates made by or on behalf of the Employer respecting the accounts, conduct, duties or methods of accounting or supervision of the said employees or any of them, furnished to the Company either prior to the issuance of this bond or to any extension thereof, or at any time during its currency, shall be held to be a warranty thereof and form a basis of this guarantee and of its continuance during any extension of the term herein mentioned, and be observed and binding as a part hereof."

Each year, upon the renewal of the bond, a certificate was given by the plaintiff, as follows:

"I hereby certify that each of the employees * * * has, to the best of my knowledge, faithfully and satisfactorily performed his duties and promptly and correctly rendered his accounts during the past year; and that, so far as I know or believe, none of the said employees have been in arrears or default, nor are any of them now in that condition; that at the dates of last inspection and verification of their accounts the same were found in each case correct and in proper order; and I know of nothing concerning the habits or conduct of any of said employees which should render it unadvisable to continue their guarantee."

The cause was tried before a jury and a verdict rendered in favor of the plaintiff in the sum of $2,500, and judgment was thereafter entered for that amount together with the costs.

(1) Evidence was introduced on behalf of the plaintiff to show a proper annual inspection of the books of accounts, as required by the indemnifying bond; that there was a semiannual audit made by their traveling auditor and an annual audit made by Price, Waterhouse & Company, certified accountants. The defendant, however, insists that neither audit

constituted an inspection and verification of Coyer's accounts as required by the bond. We are not able, however, to agree with that contention. We are of the opinion that there was sufficient evidence that the plaintiff exercised, as required by the bond, "reasonable skill, care and precaution in the examination and supervision of the books of accounts" of its employees, and that there was sufficient evidence of "inspection, audit and verification of their books and accounts." The recitation of Ford, chairman of the auditing committee, as to the purpose of the annual audit made by Price, Waterhouse & Company, certified accountants, states that it was "for the twofold purpose of verifying the assets and liabilities on December 31, 1910, and examining the cash transactions for the two years with a view to ascertaining whether or not the payments were supported by proper vouchers and the receipts have been duly accounted for, and that generally speaking the books were properly kept and the rights of the proprietary tenants respected and safeguarded." And it follows, that an audit made with that purpose and in that way was proper evidence to submit to the jury. That annual audits actually were made is not denied. Further, the evidence of Barton, the assistant auditor for the plaintiff, is to the effect that, outside of the annual audit by Price, Waterhouse & Company, certified accountants, there was an audit—which he called a periodical check—every 6 months, made of Coyer's accounts by the auditor of the plaintiff. It is impossible to read the evidence of Barton, concerning the annual audit of the chartered accounts and the audit verification made by Ohlinger, the traveling auditor of the plaintiff, without being convinced that there was considerable evidence tending to show that the requirements of the bond were complied with. The evidence of Barton is to the effect that he saw Ohlinger go over the entire stock of unused tickets,

both suburban and parcel room, that Coyer was charged with, and that "it was to check Mr. Coyer's account." Ohlinger, himself, testified that "about twice a year I checked the ticket stock and all the unsold tickets and parcel tickets in possession of the company charged to this man Coyer." The argument of counsel for the defendant would seem to lead to the conclusion that wherever an audit did not discover a defalcation—even though afterwards it turned out that it might not have been difficult to discover—it would not be a compliance with the requirements of such a bond. The maximum requirement of the bond, however, is merely that the plaintiff shall be diligent and exercise reasonable skill, care and precaution in its examination and supervision of the books and accounts, so as to prevent or detect defalcation; and, also, that a competent audit shall be made at least once in every 12 months. *United States Fidelity & Guaranty Co. v. First Nat. Bank of Dundee*, 233 Ill. 475. The evidence was submitted to the jury and it was instructed quite elaborately and aptly as to the law applicable, and, from the evidence and the instructions, they concluded that the requirements of the bond were complied with. We are of the opinion that there was ample evidence to justify the jury in reaching that conclusion.

Nor do we find anything in the nature of misrepresentation in the certificates which were attached to each yearly schedule. In *Whyland v. Chicago Bonding & Surety Co.*, 209 Ill. App. 485, the bond insured against the defalcation of a particular employee who was a cashier and bookkeeper; and in the certificate given for the renewal of the bond it was positively stated that he had honestly accounted for all money in his custody "and is not now in default to me." In the instant case, where the plaintiff is a railroad company and the schedule attached to the bond contains the names of a large number of employees, the certifi-

124    APPELLATE COURTS OF ILLINOIS.

C. & W. I. R. Co. v. The Guar. Co. of N. America, 214 Ill. App. 118.

cate signed by certain officers of the company and referring to the employees whose names were set forth, the schedule recited, "to the best of my knowledge" has correctly rendered his accounts, and "so far as I know or believe, none of the said employees have been in arrears or default," and "that at the dates of last inspection and verification of their accounts the same were found in each case correct and in proper order," etc. In the *Whyland* case, *supra,* the plaintiff stultified himself when he brought suit. In the instant case, that which is set forth in the certificate is entirely consistent with the present claim of the plaintiff. An annual and two intermediate audits had been made and, as far as the plaintiff knew, at the time the certificates were given, there was no default, and it was entitled to and entirely justified in giving the certificates for the renewals of the bond; and particularly as there is no charge or evidence of fraud or bad faith. The bond, which was renewed from time to time, was not concerning a single individual only, but undertook to insure a series of names as set forth in an attached schedule; and when a certificate was given for a renewal, it would be based simply on the audits that had been made. The terms of the bond in the instant case are much narrower than in *Guarantee Co. of North America v. Mechanics' Sav. Bank & Trust Co.,* 183 U. S. 402. In that case it was expressly provided that if the employer became aware that the employee was engaged in speculation or gambling, the surety should be notified, and as the employer did obtain such information, and failed to notify the surety, the latter was not liable on its bond.

(2) It is further contended by the defendant that the suit was barred by the limitation clause contained in the bond. Section 13 of the bond provides that no suit shall be instituted upon the bond unless it is brought within one year from the date of discovery of the default. For a discussion of the law applicable to this contention and also concerning the pertinent

facts which are involved, we refer to the language used in our former opinion when this cause was here before on review 207 Ill. App. 483.

As to instruction number 11, we are of the opinion that the court did not err in its refusal. It was the function of the jury to determine whether the negotiations in question did constitute a waiver, and it would have been manifestly improper to instruct them that "the mere pendency of negotiations * * * conducted in good faith with a view to a compromise of the plaintiff's claim * * * was not of itself a waiver," etc. As to instruction number 6, which was tendered by the defendant and refused, we are of the opinion that it was not justified by the evidence.

It is contended, also, by the defendant, that the trial court erred in admitting in evidence the letter of July 23, 1913. It is claimed that because it was written after the expiration of a year it was incompetent. Considering, however, the contents of the letter of April 14, 1913, which, together with an inclosed memorandum, was sent by the counsel for the defendant to the plaintiff, also the letter of June 14, 1913, sent by counsel for the defendant to the auditor of the plaintiff, and the letter of July 23, 1913, sent by the plaintiff to counsel for the defendant and the answer thereto of the same date by counsel for the defendant to the plaintiff, which latter letter contains the following: "Personally, I feel that the offer of compromise as made is as fair as you could expect in view of the facts," we are of the opinion that the evidence offered was entirely competent.

The record shows, both as to the evidence and the instructions, that the defendant has had a fair trial; and we do not find anything, suggested by counsel or otherwise, to justify disturbing the verdict of the jury.

Finding no error in the record the judgment is affirmed.

*Affirmed.*